**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 15 2024

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

**LLOYD MCKINNEY**

**PLAINTIFF**

v.                          Case No. 4:24-CV-_880-KGB_

**AMMUNITION OPERATIONS, LLC**
**DBA REMINGTON**                          **DEFENDANT**

### ORIGINAL COMPLAINT

COMES NOW Lloyd Mckinney, by and through his attorneys Elizabeth Rogers and Chris Burks of WH Law, for his Original Complaint against Ammunition Operations, LLC dba Remington, he does hereby state and allege as follows:

### I. PRELIMINARY STATEMENTS

1.      Plaintiff brings this action against the Defendant for violation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. Code § 2000(e)2 ("Title VII") and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, et seq. ("ACRA") for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and costs, including reasonable attorneys' fees, as a result of Defendant's discriminatory actions toward Plaintiff, resulting in adverse employment actions against him and a hostile workplace.

2.      Plaintiff received inequitable treatment and an adverse employment action as a result of his race, which is African American, and in retaliation for his complaints.

3.      Upon information and belief, Defendant has willfully and intentionally committed violations of Title VII and ACRA, as described, *infra*.

This case assigned to District Judge _Baker_
and to Magistrate Judge _Cavin_

## II. JURISDICTION AND VENUE

4.     The United States District Court for the Eastern District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under Title VII.

5.     Plaintiff's claims under ACRA form part of the same case or controversy and arise out of the same facts as the Title VII claims alleged in this Complaint.

6.     Therefore, this Court has supplemental jurisdiction over Plaintiff's ACRA claims pursuant to 28 U.S.C. § 1367(a).

7.     The acts complained of herein were committed and had their principal effect within the Central Division of the Eastern District of Arkansas. Accordingly, venue is proper within this District pursuant to 28 U.S.C. § 1391.

8.     Defendant does business in this District and a substantial part of the events alleged herein occurred in this District.

9.     The witnesses to Title VII and ACRA violations alleged in this Complaint reside in this District.

## III. THE PARTIES

10.     Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

11.     Plaintiff is a resident and citizen of Pulaski County, Arkansas.

12.     Plaintiff Lloyd Mckinney was hired at the Lonoke Remington Arms plant in 2012, and he has been continuously employed at that location since that date.

13.     Plaintiff has been employed by Defendant since Defendant assumed ownership of the Lonoke facility.

14.     Defendant Ammunition Operations LLC dba Remington is a foreign limited liability company headquartered in Minnesota.

15.     Defendant Ammunition Operations LLC dba Remington can be served through its agent for service, CT Corporation System.

16.     Defendant Ammunition Operations LLC dba Remington is an "employer" within the meanings set forth in Title VII and ACRA, and was, at all times relevant to the allegations in this Complaint, Plaintiff's employer.

## IV.    FACTUAL ALLEGATIONS

17.     Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

18.     Plaintiff has been employed at the Lonoke Remington Arms plant since February 28, 2012, most recently as a Manufacturing Support Associate.

19.     During Plaintiff's employment, he has been subjected to harassment and discrimination on the basis of his race, which is African American.

20.     During Plaintiff's employment, a supervisor has called another employee the n-word at work. This supervisor was not terminated and remained employs by Defendant.

21.     During Plaintiff's employment, he observed that it was a general practice in Defendant's facility to only allow African American production employees to enter certain areas and use certain parts of the facility. African American employees like Plaintiff were not allowed to

use a certain bathroom in part of the facility, even though it was the closest bathroom to where Plaintiff worked and the most convenient one for him to use.

22.     On March 29, 2024, Plaintiff entered this bathroom to use it.

23.     Another female employee observed Plaintiff entering the bathroom and complained to the white night supervisor, who was the same supervisor that previously called an employee the n-word.

24.     The supervisor entered the bathroom and called to Plaintiff, who was in the stall at the time and did not respond because he was using the bathroom.

25.     When Plaintiff left the bathroom, the supervisor confronted him in front of three other employees and called Plaintiff over to him. He yelled at Plaintiff and told him not to use that bathroom again, even though it was a universal bathroom.

26.     Plaintiff reported this supervisor to Defendant's Human Resources department for discriminating against him on the basis of his race by yelling at him and restricting him from using a bathroom.

27.     During multiple meetings regarding Plaintiff's report, the supervisor claimed that he was told that Plaintiff was in there being loud or listening to loud music, even though Plaintiff was not listening to loud music or doing anything other than using the bathroom.

28.     Defendant's management told Plaintiff that he could use any bathroom in the facility, aside from those designated for women (which this bathroom was not).

29.     After Plaintiff made complaints of race discrimination, he was told that the supervisor was asking other employees what schedule and hours Plaintiff worked.

30.     After this, Plaintiff's schedule was abruptly changed from the schedule he had worked for the past year and a half.

31.     For a year and a half, Plaintiff worked ten hours a day, five days a week.

32.     After Plaintiff's complaint, Defendant changed his schedule to eight hours a day, which qualified as an adverse employment action because it reduced Plaintiff's wages.

33.     Defendant also told Plaintiff that his position was being eliminated.

34.     Defendant also moved Plaintiff from the night shift to the day shift.

35.     These factors also qualify as adverse actions as Plaintiff was told his position was eliminated and the terms and conditions of his employment were changed.

36.     Plaintiff subsequently filed a charge with the Equal Employment Opportunity Commission.

37.     After Plaintiff filed the charge, Defendant reinstated him to the Manufacturing Support Associate position to make it appear that they were not taking adverse actions against Plaintiff.

38.     Defendant also moved Plaintiff back to the day shift for the same reason.

39.     Plaintiff observed that since he complained and filed his EEOC charge, he has not been allowed to work overtime, even though Defendant's other employees who work as Manufacturing Support Associates, performing the same job duties as Plaintiff, are all allowed to work overtime.

40.     As a result of Defendant's actions against him, Plaintiff has suffered a hostile work environment, which has caused him to seek treatment for depression and anxiety. As a result of his treatment for depression and anxiety, Plaintiff has received attendance points for leaving work,

when Plaintiff previously had a perfect attendance record and excellent evaluation scores throughout his fourteen years of employment.

41.     As a result of the ongoing discrimination Plaintiff experienced as a result of his race, which is African American, and in retaliation for his complaints, Plaintiff has suffered a hostile work environment and adverse actions, including his position being eliminated and his wages being reduced.

## V.    FIRST CLAIM FOR RELIEF – Title VII Claims

42.     Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

43.     Plaintiff filed a timely charge with the EEOC, received a right to sue letter, and thus exhausted his administrative remedies.

44.     Defendant engaged in unlawful employment practices at their facility in Lonoke, Arkansas, in violation of 42 U.S. Code §2000e-2.

45.     Specifically, and as detailed above, Plaintiff, who is African American, received adverse employment actions and a hostile work environment as a result of ongoing racial discrimination.

46.     Defendant employs white employees who were not subject to the same treatment that Plaintiff experienced during his employment.

47.     White employees were not harassed and forbidden from using certain bathrooms or areas in Defendant's facility because of their race.

48.     White employees did not have their hours reduced, their schedules changed, or their positions eliminated after making reports of racial discrimination.

49.    As a result, Plaintiff was treated disparately from Defendant's white employees.

50.    At all relevant times, Plaintiff could perform the essential function of the position for which he was hired.

51.    However, Plaintiff was terminated from his position within the relevant statutory period.

52.    The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his race.

53.    The unlawful employment practices complained of above were and are intentional.

54.    The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

55.    Pursuant to Title VII of the 1964 Civil Rights Act, as amended, Plaintiff is entitled to, and he seeks, an additional amount as compensatory and punitive damages equal to the sum of his lost wages or salary, benefits and/or other compensation denied or lost to him by reason of Defendant's violations of Title VII, plus any interest he is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of Title VII.

## VI.    SECOND CLAIM FOR RELIEF – ACRA Claims

56.    Plaintiff repeats and re-alleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

57.    Plaintiff has timely filed a charge with the EEOC, received a right to sue letter, and has thus exhausted his administrative remedies.

58.    Specifically, and as detailed above, Plaintiff, who is African American, received adverse employment actions and a hostile work environment as a result of ongoing racial discrimination.

59.    Defendant employs white employees who were not subject to the same treatment that Plaintiff experienced during his employment.

60.    White employees were not harassed and forbidden from using certain bathrooms or areas in Defendant's facility because of their race.

61.    White employees did not have their hours reduced, their schedules changed, or their positions eliminated after making reports of racial discrimination.

62.    As a result, Plaintiff was treated disparately from Defendant's white employees.

63.    At all relevant times, Plaintiff could perform the essential function of the position for which he was hired.

64.    However, Plaintiff was terminated from his position within the relevant statutory period.

65.    The effect of the practices complained of above have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of her race.

66.    The unlawful employment practices complained of above were and are intentional.

67.    The unlawful employment practices complained of above were done with reckless indifference to the federally protected rights of Plaintiff.

68.    Pursuant to Arkansas Civil Rights Act, as amended, Plaintiff is entitled to, and he seeks, an additional amount as compensatory and punitive damages equal to the sum of his lost

wages or salary, benefits and/or other compensation denied or lost to him by reason of Defendant's violations of ACRA, plus any interest he is entitled to for these causes, because Defendant's action were malicious and Defendant had no reasonable grounds for believing that its actions were not in violation of ACRA.

## VII.    PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Lloyd Mckinney respectfully prays that Defendant be summoned to appear and to answer herein as follows:

(A)    A declaratory judgment that Defendant's practices violate Title VII of the Civil Rights Act of 1964, 42 U.S. Code § 2000(e)-2 and the related regulations;

(B)    A declaratory judgment that Defendant's practices violate the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.* and the related regulations;

(C)    Judgment for damages pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S. Code §2000(e)-2, *et seq.* for all compensation, compensatory, and punitive damages owed to Plaintiff;

(D)    Judgment for damages pursuant to Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, for all compensation owed Plaintiff for back pay and associated interest and fees;

(E)    An order directing Defendant to pay compensatory and punitive damages to Plaintiff along with pre-judgment interest, reasonable attorney's fees, and all costs connected to this action;

(F)    Such other and further relief as this Court may deem necessary, just and proper.

Respectfully submitted,

**LLOYD MCKINNEY, PLAINTIFF**

WH Law
North Little Rock Office
501.888.4357

By:      Elizabeth Rogers (ABN: 2023219)
         elizabeth.rogers@wh.law
         Chris Burks (ABN: 2010207)
         chris@wh.law

         Mailing Address:
         1 Riverfront Place, Suite 745
         North Little Rock, AR 72114