**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

LLOYD MCKINNEY,                                                  PLAINTIFF,


v.
                                                            CASE NO.: 4:24-CV-00880-KGB

AMMUNITION OPERATIONS, LLC
D/B/A REMINGTON,                                              DEFENDANT.


**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, Defendant

Ammunition Operations, LLC d/b/a Remington ("Remington") seeks summary judgment on all

claims in Plaintiff's Complaint.

**I.      STATEMENT OF THE CASE**

Plaintiff Lloyd McKinney ("Plaintiff" or "McKinney") filed his Complaint on October 15,

2024, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Arkansas

Civil Rights Act ("ACRA"). Plaintiff, who is African American, alleges Remington discriminated

against him and subjected him to a hostile work environment based on his race.[1] Plaintiff's

complaints center around a single interaction with a supervisor during which Plaintiff was

allegedly told not to use a bathroom near the worksite's administrative personnel (the "Bathroom

Incident").  Plaintiff acknowledges that the supervisor said nothing about Plaintiff's race during

their verbal exchange, admits the supervisor told him another employee had complained he was

being too loud in the restroom, and points to no evidence to tie his race to the alleged request that

---

[1]Although Plaintiff's Complaint does not assert a separate claim for retaliation, the Complaint includes some factual allegations that could be construed as an attempt to raise such a theory. As such, Remington addresses these allegations herein.

he not use that particular restroom.  Plaintiff further acknowledges that, after he complained about the incident to human resources and plant management, he was told he could use any bathroom at the facility that he chose, other than those designated for women.  Plaintiff nonetheless contends that, after this incident, his shift and schedule were changed, that he was afforded diminished overtime opportunities, and that these changes, although applicable to other employees in Plaintiff's department, were either motivated by discrimination or based on his complaints about the Bathroom Incident.  Moreover, contrary to the assertions in his Complaint, Plaintiff's sworn deposition testimony shows that he was not denied the opportunity to work overtime and that his shift remained the same after the Bathroom Incident.

Plaintiff cannot produce evidence to show a genuine issue as to any material fact; rather, his claims rest solely on speculation, conjecture and, by his own characterization, "hearsay." Plaintiff cannot point to evidence to create an inference of unlawful discrimination, nor can he rebut Remington's legitimate, business-related reasons for the changes to overtime protocols and scheduling in Plaintiff's department. Ultimately, Plaintiff's complaints, and his allegations of discrimination, relate to a single, isolated interaction with another employe during which Plaintiff's race was not mentioned. Summary judgment is warranted in Remington's favor on all of Plaintiff's claims as a matter of law.

## II.   FACTS

Remington hereby incorporates by reference its Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment ("SOF") into the "Facts" section of this memorandum.

## III.   STANDARD OF REVIEW

The standard of review for summary judgment is well established. When a party moves for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is

no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). This is a "threshold inquiry of . . . whether there is a need for a trial – whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252. The Court must view the evidence and the inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* The nonmoving party must then demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik*, 47 F.3d at 957. A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 256.

## IV.    ARGUMENT AND AUTHORITIES

Plaintiff's claims fail as a matter of law. First, Plaintiff's racial discrimination claim fails because he does not identify an adverse employment action or similarly situated employees who were treated more favorably. Plaintiff also cannot rebut Remington's legitimate business reasons for the neutral changes to its overtime and other policies. Second, Plaintiff's hostile work environment claim fails because he cannot point to evidence to suggest the complained-of conduct, a single interaction with a supervisor, had anything to do with his race or that it altered the terms

and conditions of his employment. Because Plaintiff cannot meet the essential elements of either of his claims, summary judgment in Remington's favor is warranted on all counts. [2]

### A. Plaintiff's discrimination claim must fail because Plaintiff cannot show Remington's reasons for its policy changes were a pretext for discrimination.

To succeed on his discrimination claim at summary judgment, Plaintiff must identify either direct evidence of discrimination or circumstantial evidence sufficient to create an inference of discrimination. *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 435 (8th Cir. 2016). "Evidence is 'direct' if it establishes 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the employer's decision." *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003) (quoting *Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997)). Plaintiff does not assert his race was mentioned or referenced during the above-referenced "Bathroom Incident" and he can point to no evidence tying the incident or Remington's subsequent changes to its overtime or other policies to his race. As such, this is not a direct evidence case.

Without direct evidence, Plaintiff must "create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed. 2d. 668 (1973)." *Jackson v. United Parcel Serv., Inc.*, 548 F.3d 1137, 1140 (8th Cir. 2008) (citation omitted). Under the *McDonnell Douglas* framework, a "plaintiff bears the burden of establishing a *prima facie* case of discrimination." *Id.* If the plaintiff meets this initial burden, a presumption of discrimination is created, and the defendant must then "articulate

---

[2] Cases arising under the ACRA are reviewed in the same manner as Title VII claims. *Merritt v. Albemarle Corp.*, 496 F.3d 880, 883 (8th Cir. 2007). Accordingly, Remington does not distinguish Plaintiff's Title VII claims and his ACRA claims, which are based on the same allegations, in this Memorandum.

a legitimate, non-discriminatory reason for the adverse employment action." *Blackwell*, 822 F.3d at 435 (citation omitted). If the defendant meets this burden, the plaintiff must then "prove the proffered justification is merely a pretext for discrimination." *Id.*

### 1.    Plaintiff cannot establish a *prima facie* case of discrimination.

To establish a *prima facie* case of race discrimination, Plaintiff must demonstrate that:  (i) he is a member of a protected class; (ii) he met the legitimate expectations of his employer; (iii) he suffered an adverse employment action; and (iv) similarly situated employees that were not members of his protected class were treated differently. A failure to identify evidence to support just one element of a *prima facie* case defeats a discrimination claim. *See Tatum v. City of Berkeley*, 408 F.3d 543, 550-51 (8th Cir. 2005).

Plaintiff, who remains employed with Remington, cannot meet his summary judgment burden to show that he suffered an adverse employment action or that similarly situated employees who were not members of his protected class were treated differently. In his Complaint, Plaintiff alleges: (i) he was not allowed to work overtime, (ii) he was moved from the day shift to the night shift, and (iii) his schedule was changed from five ten-hour days per week to four eight-hour days per week. But Plaintiff's deposition testimony contradicts his assertions in his Complaint.  In his deposition, Plaintiff admitted that: (i) he was never denied the opportunity to work overtime and was not treated differently than coworkers regarding overtime policies, (ii) he was never required to and did not work on the night shift, and (iii) he was not treated differently with regard to a department-wide shift scheduling modification. Accordingly, Plaintiff's discrimination claim fails as a matter of law.

> **a. Plaintiff cannot establish that Remington denied him the opportunity to work overtime or required him to work a different shift.**

Prior to April of 2024, Plaintiff generally was allowed to work overtime at his discretion and preference. SOF ¶ 22. In April of 2024, after the employee with Plaintiff's job functions on the overnight shift was laid off, Plaintiff's supervisors began requiring Plaintiff and his coworker, a white male with the same job functions as Plaintiff, to sign up in advance for overtime hours. SOF ¶¶ 23-25. This change did not mean that Plaintiff was not allowed to work overtime, and he acknowledges as much. SOF ¶ 27. Rather, to ensure adequate staffing coverage after the layoff of the overnight shift employee, Plaintiff and his white co-worker were required to provide advance notice of their desire to work overtime. SOF ¶¶ 24-25.

To establish that he was subjected to an adverse employment action, Plaintiff must show he experienced a "disadvantageous change to the compensation, terms, conditions, or privileges of employment." *See Muldrow v. St. Louis,* 601 U.S. 346, 144 S. Ct. 967, 974, 218 L. Ed. 2d 322 (2024); *see also* 42 U.S.C. § 2000e-2(a). Even assuming *arguendo* that the changes to the overtime protocols cited by Plaintiff could qualify as adverse actions, Plaintiff's own testimony confirms they had no adverse impact on him. Specifically, although Plaintiff alleges in his Complaint that he was denied the opportunity to work overtime, he testified that he was, in fact, permitted to sign up for overtime and simply chose not to do so:

```
Q    Okay.  So you could have signed up for the overtime;
right?

A    Yeah.
```

SOF ¶ 27.[3] Accordingly, Plaintiff's testimony reveals that he was never denied the opportunity to work overtime or treated differently than any of his co-workers. SOF ¶¶ 25-27.

In the same vein, contrary to the allegations in his Complaint about being moved from the day shift to the night shift, Plaintiff testified that he in fact never worked the night shift:

> At any point between March 29th and May 13th, did you -- were you assigned to the night shift; did you work the night shift?
>
> A    No.  I -- I -- I did not.
>
> A    I never had to do it.

SOF ¶ 32.

Plaintiff's testimony confirms that the core allegations supporting his discrimination claim – that he was denied overtime and forced to work the night shift – are untrue. As such, these allegations cannot support Plaintiff's claims under Title VII.

### b. Plaintiff cannot establish that similarly situated employees who were not members of his protected class were treated differently.

"The test for determining whether employees are similarly situated to a plaintiff is a rigorous one." *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 956 (8th Cir. 2012) (citation omitted). A similarly situated employee "must have dealt with the same supervisor, have been subjected to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1043 (8th Cir. 2007) (citation omitted).

---

[3] Plaintiff also testified that the overtime sign-up policy was implemented on only a temporary basis. SOF ¶ 28. After Plaintiff returned from medical leave in mid-December of 2024, he testified that he regularly works overtime, which is scheduled based on informal conversations with his supervisor. SOF ¶ 28.

Once again, Plaintiff's Complaint is at odds with his sworn deposition testimony.  Plaintiff asserts in his Complaint that white employees were "not subject to the same treatment that Plaintiff experienced during his employment." Compl. ¶ 59. But Plaintiff testified that he and Mike Hawkins, a white employee who had Plaintiff's same job functions and worked in the same department as Plaintiff, were both temporarily required to sign up for overtime in advance. SOF ¶ 26.

Plaintiff further alleges in his Complaint that "[w]hite employees did not have . . . their schedules changed . . ." Compl. ¶ 61. However, he testified Remington's modification to its shift schedule structure, from four eight-hour shifts five days per week to two ten-hour shifts four days per week, applied to his entire department:

```
Q    And it was also during that time when they changed the
schedule from five days to four days; correct?
A    Yes.
Q    And that was a plant-wide change; right?
A    No.  It happened -- it happened in the center fire --
center fire.  That's one --
Q    Okay.  In the center fire group?
A    Yeah.  Yeah.
Q    And the center fire group includes -- hold on a second --
it includes the shells which you were in?
A    Yeah.
Q    It, also, includes bullets?
A    Yeah.
Q    Packaging?
A    Yeah.
Q    Loading?
A    Yes.
Q    Okay.
     So all the employees who worked in the center fire group
and those subgroups went from working a five-day a week
schedule to a four-day a week schedule working 10 hours per
day?
A    Yes.
```

SOF ¶ 31.

In sum, Plaintiff's own testimony contradicts his allegations of disparate treatment, and he has failed to identify any similarly situated white employee who was treated more favorably under comparable circumstances. Because Plaintiff cannot meet the standard for demonstrating that similarly situated employees were treated more favorably, his discrimination claim must fail as a matter of law. [4]

### 2. The evidence establishes legitimate, nondiscriminatory reasons for Remington's actions.

Even if Plaintiff could raise a fact issue to support the elements of a *prima facie* case of discrimination, Remington had legitimate business reasons for the neutral employment policy changes about which Plaintiff complains. Remington's burden is to "articulate some legitimate nondiscriminatory reason for" any adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. "[T]he defendant's explanation of its legitimate reasons must be clear and reasonably specific." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 258 (1981). However, this burden is "not onerous" and does not require proof by a preponderance of the evidence. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011) (en banc) (cleaned up).

---

[4] Plaintiff also referenced in his deposition a handful of other workplace events that he contends might support his discrimination claim, but he offers no evidence explaining how these events resulted in a disadvantageous change to the terms, conditions, or privileges of his employment. Nor does Plaintiff identify any similarly situated white employees who were treated more favorably in connection with these allegations or offer any evidence to support an inference that these allegations were related to his race. For example, while Plaintiff alleges that his position was "eliminated," he testified that his job duties remained unchanged and that only his title was modified. SOF ¶ 36. Plaintiff further testified that he has performed the same job for approximately 14 years and, in fact, received additional responsibilities after the "Bathroom Incident". SOF ¶ 36.  Plaintiff also testified that, although attendance "points" were added to his record, the only consequence was that the points appeared on his performance evaluation; he was not otherwise disciplined. SOF ¶ 37.  Finally, although Plaintiff claims he was denied two internal transfers, his deposition testimony reveals the positions were unavailable to him because he took an extended leave of absence when the Company was seeking to fill the positions. SOF ¶ 38. None of these allegations, even if accepted as true, establish a materially adverse employment action, let alone one linked to race-based animus. *See Clark v. Nestlé USA, Inc.*, No. 3:23-cv-117-DPM, 2025 U.S. Dist. LEXIS 28001, at *3 (E.D. Ark. Feb. 18, 2025) (no adverse employment action where Plaintiff could not show how alleged employer actions disadvantaged him.)

Remington had legitimate, nondiscriminatory business justifications for the actions about which Plaintiff complains. As discussed above, Remington implemented a temporary sign-up process for overtime to ensure adequate shift coverage following the layoff of an employe who had previously staffed the overnight shift. SOF ¶¶ 23-24. To ensure there was adequate coverage and staffing, Plaintiff's supervisors began requiring both Plaintiff and his coworker Mike Hawkins, a white employee performing the same role as Plaintiff on the same shift, to sign up in advance for overtime.[5] SOF ¶¶ 24-26. Accordingly, Remington has met its burden to articulate a legitimate, nondiscriminatory reason for its actions.

### 3.  Plaintiff cannot show that the reasons for Remington's actions were a pretext for discrimination.

After an employer produces a legitimate, nondiscriminatory reason for an alleged adverse employment action, the burden shifts back to the plaintiff to show that the employer's proffered reason is merely a pretext for intentional discrimination. *EEOC v. Prod. Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2014). "[T]he showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for [taking adverse action against] an employee. A plaintiff must also demonstrate that the circumstances permit a reasonable inference of discriminatory animus." *Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 643 (8th Cir. 2008) (citation omitted).

Plaintiff's "burden to show pretext 'merges with the ultimate burden of persuading the court that he was the victim of intentional discrimination.'" *Torgerson*, 643 F.3d at 1046 (quoting *Tex. Dep't of Cmty. Affairs*, 450 U.S. 248 at 256). One way "a plaintiff may demonstrate a material question of fact regarding pretext" exists is by "show[ing] that the employer's explanation is

---

[5] Similarly, Plaintiff can point to no evidence to suggest that Remington's decision to change the hours of its shift schedules in Plaintiff's department was a pretext for discrimination.

unworthy of credence because it has no basis in fact" *Id* at 1047. To establish pretext, Plaintiff must substantiate his allegations with probative evidence; speculation and conjecture are insufficient. *See Putman*, 348 F.3d at 733-34.

Plaintiff has no competent summary judgment evidence to support his allegations concerning the motives behind Remington's actions. At the outset, Plaintiff testified the supervisor involved in the "Bathroom Incident" told him another employee had complained he was being too loud in the restroom. SOF ¶ 13. Plaintiff can point to no evidence to link his race to the alleged request that he not use that particular restroom. In addition, while Plaintiff speculated in his deposition that the supervisor involved in the Bathroom Incident was involved in the change to overtime protocols within Plaintiff's department, he admitted this belief is based on multiple levels of hearsay. SOF ¶ 34. And moreover, Plaintiff acknowledges that he was never actually denied the opportunity to work overtime. SOF ¶ 27. Even if accepted as true, Plaintiff's testimony does not as a matter of law suggest any discriminatory or retaliatory motive.

The question before the Court is not whether Remington made good or fair decisions, but whether it took an adverse employment action based on a discriminatory animus. *Bowman v. 3M Co.*, No. 5:23-CV-5121, 2025 U.S. Dist. LEXIS 10938, at *8 (W.D. Ark. Jan. 22, 2025). Ultimately, Plaintiff cannot establish a *prima facie* case of race discrimination and cannot offer competent evidence to demonstrate any inference of discriminatory animus sufficient to overcome Remington's legitimate, nondiscriminatory reasons for the actions discussed herein. Accordingly, Plaintiff's discrimination claim must fail as a matter of law.[6]

---

[6] Plaintiff's Complaint does not separately identify a claim for "retaliation." To the extent Plaintiff intends to assert such a claim, it fails for the same reasons as Plaintiff's discrimination claim. Just as Plaintiff has no evidence to connect changes to Remington's policies regarding overtime and shift scheduling to his race, he likewise cannot connect those decisions to his complaints about the "Bathroom Incident." As described below, immediately after Plaintiff complained, the plant manager at the Lonoke facility told him he could use any bathroom of his choice at the facility, other than the women's bathrooms. SOF ¶ 18. And again, Plaintiff's deposition testimony confirms (i) his opportunities to work overtime were never diminished and the changes to overtime policies applied neutrally to other

**B. Plaintiff's hostile work environment claim fails as a matter of law because he cannot identify actionable harassment, and there is no evidence to link his race to the complained-of conduct.**

Plaintiff's hostile work environment claim also fails as a matter of law because it is based entirely on Plaintiff's own speculation. To succeed on a hostile work environment claim, a plaintiff must show: "(1) [he] is a member of a protected group, (2) unwelcome harassment occurred, (3) a causal nexus existed between the harassment and [his] protected status; and (4) the harassment affected a term, condition, or privilege of employment." *Hairston v. Wormuth*, 6 F.4th 834, 841 (8th Cir. 2021) (internal quotation marks omitted). The harassing conduct must be sufficiently severe and pervasive to create a hostile environment from the objective standpoint of a reasonable viewer and from the subjective standpoint of the plaintiff. *Green v. Franklin Nat'l Bank*, 459 F.3d 903, 910 (8th Cir. 2006) (quoting *Howard v. Burns Bros., Inc.*, 149 F.3d 835, 840 (8th Cir. 1998)). Here, Plaintiff cannot establish that he experienced unwelcome harassment; that there was a causal link between any alleged harassment and Plaintiff's membership in a protected group; or that any alleged harassment affected a term, condition, or privilege of employment.

**1. The summary judgment evidence disproves that the complained-of conduct constitutes actionable harassment.**

The Supreme Court has "cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment." *Blomker v. Jewell*, 831 F.3d 1051, 1056-57 (8th Cir. 2016) (citation omitted). The "standards for a hostile environment are demanding, and conduct must be extreme and not merely rude or unpleasant to affect the terms and conditions of employment." *Id.* at 1057 (internal quotations omitted) (citations omitted). Courts must "filter out

---

employees; and (ii) Plaintiff was never required to change his shift beyond the hours modification that applied to all Centerfire employees. SOF ¶¶ 26-27, 30-32. As such, these allegations cannot support a claim for retaliation.

complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [race]-related jokes, and occasional teasing." *Id.* (emphasis in original), quoting *Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005); *Nitsche v. CEO of Osage Valley Elec. Co-op.*, 446 F.3d 841, 845-46 (8th Cir. 2006) (same). Even "vile or inappropriate" behavior may be insufficient to rise to the level of an actionable hostile work environment claim. *Blomker*, 831 F.3d at 1058.

Plaintiff's hostile work environment claim is based on a single alleged incident in which a supervisor allegedly called out to him while he was in the bathroom, told him he could not use a particular bathroom, and yelled at him during their communication on the topic. Compl. ¶¶ 24-25. At most, Plaintiff's testimony reveals that the supervisor's alleged conduct was rude or aggressive, but that this lone incident does not rise to the level of actionable harassment. For instance, Plaintiff testified that the supervisor used commonplace, non-aggressive, racially neutral language:

```
Q    What did -- what was said?

A    What you doing?  What you doing?  Are you all right?
```

SOF ¶ 10. Plaintiff also testified that the supervisor used "aggressive hand gestures" when allegedly instructing Plaintiff not to use the bathroom in the administrative work area but acknowledged there was no mention of his race in connection with this incident:

```
Q    Okay.  Well, what did he say, as best -- as best you can
remember?

A    He was -- he was so aggressive.  I can remember that he
were real aggressive, moving around with hand movement.  And he
told me Lisa Leberuw told me you was in that bath -- you was in
the bathroom playing loud music.
```

SOF ¶ 13.

In short, Plaintiff's allegations, centered on a brief and isolated exchange devoid of racial reference or physical threat, reflect an unpleasant interaction at most. *See Helton v. Southland Racing Corp.*, 600 F.3d 954, 959-60 (8th Cir. 2010) (holding rude and demeaning conduct by a supervisor, including yelling and screaming on multiple occasions, was not severe or pervasive enough to affect a term, condition, or privilege of employment). This conduct is neither severe nor pervasive and does not rise to the level of actionable workplace harassment.

### 2. There is no evidence to establish a causal link between the complained-of conduct and Plaintiff's race.

To survive summary judgment on his harassment claim, Plaintiff must produce evidence to demonstrate that the "harassment" of which he complains "resulted from [his] membership in a protected class." *Moses v. Dassault Falcon Jet – Wilmington Corp*, 894 F.3d 911, 922 (8th Cir. 2018); *see also Clay v. Credit Bureau Enters.*, 754 F.3d 535, 540 (8th Cir. 2014).

An employee's "mere belief" that unwelcome conduct "was based on a protected characteristic is insufficient" to overcome an employer's motion for summary judgment. *Johnson v. United States Postal Serv.*, No. 24-1381, 2025 U.S. App. LEXIS 5445, at *4 (8th Cir. Mar. 10, 2025) citing *Bradley v. Widnall*, 232 F.3d 626, 630-33 (8th Cir. 2000) (noting employee's speculation of a "campaign of discrimination" involving negative comments, preferential treatment to white employees, coworkers assigned to spy on her, and attempts to "set her up" to fail inspections was insufficient to state a hostile work environment claim), abrogated on other grounds by *Torgerson,* 643 F.3d 1031.

Plaintiff's hostile work environment claim further fails as a matter of law because Plaintiff can point to no competent summary judgment evidence linking the alleged harassing conduct to Plaintiff's race. Instead, he relies on his own speculation and, by Plaintiff's own characterization, hearsay regarding comments or incidents that did not involve Plaintiff. For instance, as discussed

above, Plaintiff has no evidence to connect his race to the alleged request that he not use the administrative bathroom. Rather, Plaintiff testified simply that he believed the incident occurred because he is black. SOF ¶ 40. When asked to explain this belief, Plaintiff asserted that he had heard that the supervisor involved in the Bathroom Incident called another employee the "n-word" a few years prior and that he had heard that the supervisor treated two black employees "aggressively." SOF ¶ 40. But Plaintiff admitted that he never personally observed the supervisor engage in any of this alleged conduct and that none of the conduct related to him. SOF ¶ 41.  As such, Plaintiff's speculative and otherwise incompetent summary judgment evidence does not connect the Bathroom Incident to his race.

3.    **The summary judgment evidence disproves that any complained-of conduct affected a term, condition, or privilege of Plaintiff's employment.**

To show that harassing conduct has affected a term, condition, or privilege of employment, the harassment must have been "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). The Eighth Circuit "sets a high bar for conduct to be sufficiently severe or pervasive in order to trigger a Title VII violation." *Paskert v. Kenma-Asa Auto Plaza Inc.*, 950 F.3d 535, 538 (8th Cir. 2020). "To decide whether a work environment is objectively offensive, ... [courts] examine all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance." *Clay*, 754 F.3d at 540 (quoting *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 892-93 (8th Cir. 2005)). A hostile work environment does not exist where "offensive conduct consists of offhand comments and isolated incidents." *Id.*

Plaintiff's hostile work environment claim further fails because the conduct about which he complains was an isolated incident. *See, e.g., Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 807 (8th Cir. 2019) *(*finding a single incident of potential unwelcome harassment was not severe enough to alter the conditions of employment); *Carpenter v. Con-way Cent. Express, Inc.*, 481 F.3d 611, 618 (8th Cir. 2007) ("Allegations of a few isolated or sporadic incidents will not suffice; rather, the plaintiff must demonstrate the alleged harassment was so intimidating, offensive, or hostile that it poisoned the work environment."). Courts "hesitate to rely on isolated comments as proof of bias lest the law become a 'general civility code.'" *Nash v. Optomec, Inc.*, 849 F.3d 780, 785 (8th Cir. 2017) (citation omitted); *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 806 (8th Cir. 2013) (Title VII "does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace") (citation omitted).

As discussed above, Plaintiff's claims of harassment are based on the Bathroom Incident, an isolated occurrence during which Plaintiff's race was not mentioned:

```
Q    Okay.  Is that -- is that the only time anyone at the
company's told you not to use that restroom?
A    Yes.
```

SOF ¶ 42. As such, even if Plaintiff had evidence to tie the incident to his race, it would not meet the severe and pervasive standard necessary to give rise to a hostile work environment claim. Moreover, Plaintiff acknowledges that, not only was the Bathroom Incident isolated, it was promptly remedied to his satisfaction when he was told hours after the incident that he could use any bathroom he wanted other than the women's bathroom. SOF ¶ 42.

Plaintiff additionally testified there were no meaningful problems between himself and the supervisor involved in the Bathroom Incident prior to that event:

> Prior to that heated conversation, did you have any problems with Mr. Snider or prior to that time?
>
> A    Well, he told -- he told me one time to lower my voice when I talked to him, yes.
>
> Q    When was that?
>
> A    It was prior years.
>
> Q    Okay.  Anything other than that in terms of disagreements or confrontations you had with Mr. Snider prior to this incident that we've talked -- we're talking about?
>
> A    No.  Not that I can recall.

SOF ¶ 43.

The summary judgment evidence reflects, at most, a single, non-racial, and quickly resolved interaction that did not interfere with Plaintiff's ability to perform his job. This isolated event falls far short of the Eighth Circuit's demanding standard for a hostile work environment claim, and summary judgment is accordingly warranted in Remington's favor.

## V.    CONCLUSION

WHEREFORE, Defendant Ammunition Operations LLC, d/b/a Remington respectfully requests that the Court grant this Motion and dismiss each of Plaintiff Lloyd McKinney's claims against it. Remington further prays for any other and further relief to which it may be entitled, either at law or in equity.

DATED: July 18, 2025                     Respectfully submitted,

                                         **REED SMITH LLP**
                                         2850 N. Harwood Street
                                         Suite 1500
                                         Dallas, Texas 75201
                                         Phone: 469-680-4200
                                         Facsimile: 469-680-4299
                                         pmckeeby@reedsmith.com
                                         hpool@reedsmith.com

By /s/ *Paulo B. McKeeby*
    Paulo B. McKeeby (Tex. Bar No. 00784571)
    *Admitted Pro Hac Vice*

By: */s/ Hannah B. Pool*
    Hannah B. Pool (AR Bar No. 2020237)

**ATTORNEYS FOR DEFENDANT
AMMUNITION OPERATIONS LLC, d/b/a
REMINGTON AMMUNITION**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's electronic filing system, on the 18th day of July 2025, upon the following attorney of record:

Johnson D. Ogles
Ogles Law Firm, P.A.
Post Office Box 891
Jacksonville, AR 72078
501-982-8339
Fax: 501-985-1403
Email: jogles@aol.com

/s/ *Hannah  B. Pool*
Hannah B. Pool